William VARELTZIS, Plaintiff-Appellee,

v.

**LUCKENBACH STEAMSHIP COMPANY, Inc., Defendant-Appellant.**

No. 307, Docket 24846.

United States Court of Appeals Second Circuit.

Argued April 16, 1958.

Decided June 27, 1958.

William M. Kimball, New York City (Eugene Underwood, Michael J. Kenny and Burlingham, Hupper & Kennedy, New York City, on the brief), for defendant-appellant.

George J. Engelman, New York City (O. Raymond Basile, New York City, on the brief), for plaintiff-appellee.

Before CLARK, Chief Judge, and LUMBARD and WATERMAN, Circuit Judges.

## LUMBARD, Circuit Judge.

Defendant appeals from a judgment of the District Court, Southern District of New York, David N. Edelstein, Judge, entered on the verdict of a jury, awarding the plaintiff $9,000 on each of two causes of action brought under the Jones Act, 46 U.S.C.A. § 688 to recover for injuries sustained due to the negligence of the defendants. Plaintiff, a boatswain on the defendant's ship, the Florence Luckenbach, alleged two accidents: the first occurring on December 14, 1951, when he slipped and fell on a patch of ice while he was shoveling snow off the main deck of the ship; and the second occurring two days later when he slipped on an ice patch while he was proceeding along the deck to the boatswain's storeroom. Both causes of action were submitted to the jury on the grounds of negligence and unseaworthiness, and the jury, in response to interrogatories, indicated that on both occasions the defendant had been negligent but that the ship was not unseaworthy. On this appeal the defendant's main argument is that there was insufficient proof of negligence on its part to support the verdict as to the first of the alleged accidents. As we find that there was sufficient evidence of negligence to present a jury question, and further that the record supports the verdict, we must affirm the judgment of the District Court.

The Florence Luckenbach arrived at Philadelphia on Friday, December 14, 1951, and although after 5 P. M. most of the crew went ashore, the plaintiff remained on board. It had been snowing during the day and sometime after 7:00 P. M. the snow changed to rain. About 9:30 P. M. the plaintiff was ordered by the officer on watch to assemble a crew and start removing the snow and ice from the deck of the vessel. At the time there was about 5 to 7 inches of snow on the deck and there was a freezing rain falling. Thereafter during the night the temperature increased above freezing though the rain continued.

The plaintiff, following his orders, called an able bodied seaman and two ordinary seamen to assist him in the snow removal operation. As the vessel was not equipped with snow shovels or ice chippers, the men equipped themselves with large steel fireman's shovels, and started clearing the decks. The hatches were covered with canvas and to avoid tearing this canvas with the shovels the plaintiff took the firehose and washed the snow down from the hatch coverings. This procedure admittedly was proper.

By the time Vareltzis had finished washing down the hatches and some winches, windlasses and other equipment that could not be shoveled, much of the main deck had been cleared of snow. The plaintiff then cleared the poop deck and thereafter went forward to help the two ordinary seamen shovel a pile of snow extending inboard from the starboard rail between Nos. 4 and 5 hatches. All the rest of the starboard

side was clear of snow but there were a few frozen spots which the scoops had left on the exposed beaded deck.

The plaintiff walked to the forward end of the pile and, after resting a few seconds, grasped the shovel with both hands, crouched and stepped toward the pile with his right foot preparatory to putting his shovel on the deck and digging into the pile. His right foot slipped on a patch of unsanded ice which had been under the snow previously removed and he fell on the small of his back.

Two theories of negligence were submitted to the jury, namely the defendant's failure to provide snow shovels and ice chippers, and the defendant's failure to put sand or other abrasive material on the deck. The main issue about which the trial centered was the failure to sand the deck. Clearly this was not required before the snow removal got under way but inherent in the jury's determination is the finding that a reasonable exercise of due care in the circumstances presented required the defendant to sand the deck while the snow removal was in progress and before the entire operation was completed.

The jury was charged that there could be no finding of negligence for failure to sand unless the mate, whose duty it was to make constant rounds throughout the ship, knew or should have known of the existence of the patch of ice on which plaintiff slipped in sufficient time to have been able to sand it before the plaintiff was injured. It is conceded that it was the mate's duty to make constant rounds of the ship. The appellant argues, however, that the record does not show that the mate actually saw or should have seen the patch of ice on which plaintiff slipped, and that absent such proof a verdict for the defendant should have been directed by the trial judge.

 Under the Jones Act " * * * the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." Rogers v. Missouri Pacific R. Co., 1957, 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493; Ferguson v. Moore-McCormack Lines, 1957, 352 U.S. 521, 523, 77 S.Ct. 457, 1 L.Ed.2d 511. Under the facts of the instant case it was not unreasonable for the jury to have concluded that the mate knew or should have known of the ice conditions on the deck and that the defendant was negligent in failing to sand the cleared area, particularly the area around the pile of snow where the men were working.

 It is unnecessary for us to pass on the question of whether there was sufficient evidence to support the verdict on the second theory of negligence submitted to the jury, viz., whether the plaintiff was given proper equipment for the snow removal operation. The defendant did not except to the charge to the jury on this matter nor were more specific interrogatories requested. In such circumstances a " * * * general verdict is upheld where there is substantial evidence supporting any ground of recovery in favor of an appellee." Lee v. Pennsylvania R. Co., 2 Cir., 1951, 192 F.2d 226, 229; Cross v. Ryan, 7 Cir., 1941, 124 F.2d 883, cert. den. 316 U.S. 682; and see Ortiz v. Grace Line, 2 Cir., 1957, 250 F.2d 124.

The defendant also argues that trial errors were made by the District Court particularly in the exclusion of evidence said to bear on the second accident.

On December 17, 1951, two days after the first accident, the defendant's vessel was laying portside to the pier and cargo was being worked in and out of the Nos. 4 and 5 holds. Under such circumstances the crew generally used the off shore, starboard passageway. Plaintiff testified that at about 8:15 A. M., while walking aft on the starboard side, he slipped on another patch of unsanded ice between Nos. 4 and 5 hatches. The ice apparently came from rain or melted snow which ran across the deck and froze there.

In an attempt to refute the plaintiff's allegations the defendant called Captain

Zepp, the Chief Officer of the Florence Luckenbach in charge of the deck department, to testify that the stevedores did not refuse to continue work, because of any unsafe condition or ice on the deck on the day in question. The testimony was offered as circumstantial evidence that there was no ice in the area of the deck where plaintiff testified the second accident occurred. The District Court excluded the testimony.

■■ We see no error in that ruling. It is within the discretion of the trial court to exclude matters so remote as to raise only collateral issues. Newman v. Clayton F. Summy Co., 2 Cir., 1943, 133 F.2d 465. Here absence of stevedore "detentions" for that second day is clearly collateral; it would amount to nothing more than that diverse persons not identified had registered no complaint.

We have examined the defendant's other assignments of error and find them to be without substance. The judgment of the District Court is therefore affirmed.