Martin FISKRATTI, Plaintiff,

v.

PENNSYLVANIA RAILROAD COMPANY and The Long Island Railroad Company, Defendant.

United States District Court
S. D. New York.
Jan. 22, 1957.

Frank A. Lyons, New York City, for plaintiff.

Otto M. Buerger, New York City, for Long Island R. Co., Desmond T. Barry, New York City, of counsel.

Conboy, Hewitt, O'Brien & Boardman, New York City, for Pennsylvania R. Co., Joseph P. Allen, New York City, of counsel.

LEVET, District Judge.

This is a motion by the defendant, The Long Island Rail Road Company, for an order pursuant to Rules 6(b) and 59(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., to set aside a jury verdict on the ground of excessiveness. On January 9, 1957, the jury returned a verdict against The Long Island Rail Road Company and exonerated the co-defendant, the Pennsylvania Railroad Company. The liability of the defendant, Long Island Rail Road Company, was predicated on the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. The verdict against said defendant was for $222,640, less 23.8% thereof for contributory negligence, resulting in a recovery for plaintiff in the amount of $169,651.68.

At the time of the accident plaintiff was 24 years of age, married, and the father of one child. He was employed by the defendant, The Long Island Rail Road Company, as an electrician's helper at an annual salary of approximately $3,690. Plaintiff's life expectancy, according to recent expectancy tables, was 47.49 years, whereas his work expectancy was approximately 39.28 years. As a result of the accident, plaintiff sustained severe injuries, including abrasions and lacerations of the right side of the face; amputation of the right forearm; amputation of the third, fourth and fifth digits of the left hand; and a broken nose. Numerous operations and skin grafts were performed. There was testimony that further operations will be performed on plaintiff's arm, abdomen and finger, in addition to which it will be necessary to take a tendon from a toe and put it in plaintiff's left index finger in order to give it some degree of mobility. A neurologist and psychiatrist testified that there was evidence of a post traumatic neurosis and personality disorder. The plastic surgeon who performed the skin grafting operations stated that in his opinion plaintiff will be 80 to 90% disabled for the rest of his life, even if he were to be fitted with, and could learn to use, a prosthetic device. The hospital record is replete with notations concerning injections which were given for the alleviation of pain, and capsules which were given for sleep.

In determining whether the amount of damages awarded to the plaintiff are excessive, this Court will be guided by the rule expressed in Barry v. Edmunds, 116 U.S. 550, 565, 6 S.Ct. 501, 509, 29 L.Ed. 729, which is as follows:

"* * * a verdict will not be set aside in a case of *tort* for excessive damages 'unless the court can clearly see that the jury have committed some very gross and palpable error, or have acted under some improper bias, influence or prejudice, or have totally mistaken the rules of law by which the damages are to be regulated,'—that is, 'unless the verdict is so excessive or outrageous,' with reference to all the circumstances of the case, 'as to demonstrate that the jury have acted against the rules of law, or have suffered their passions, their prejudices, or their perverse disregard of justice to mislead them.' In no case is it permissible for the court to substitute itself for the jury, and compel a compliance on the part of the latter with its own view of the facts in evidence, as the standard and measure of that justice, which the jury itself is the appointed constitutional tribunal to award."

The aforesaid statement is still the rule today. See Affolder v. New York, Chicago & St. Louis Railroad Co., 339 U.S. 96, 101, 70 S.Ct. 509, 94 L.Ed. 683; Butler v. General Motors Corporation, 2 Cir., 240 F.2d 92.

There is no yardstick for measuring pain and suffering. However, an examination of several other cases may serve to guide the Court in determining whether or not the award in the instant case is so "monstrous" as to require either a new trial or conditioning the denial of the motion for a new trial upon remission of part of the verdict. See Comiskey v. Pennsylvania Railroad Company, 2 Cir., 1956, 228 F.2d 687.

In Woodington v. The Pennsylvania Railroad Company, 2 Cir., 1956, 236 F.2d 760, the record on appeal reveals that the plaintiff was 53 years of age at the time of the accident, married, and the father of three children, one of whom was an eleven year old boy who resided with the plaintiff and his wife. Plaintiff's salary was approximately $5,000 per year and his life expectancy was between 20 and 23 years. His work expectancy was about 14 years. As a result of his accident plaintiff's right leg was amputated between the knee and the hip; the left leg was stiff at the knee, the ankle and the toes, and in addition to other bodily injuries, he lost the use of his right hand and arm. There was evidence in the Woodington case, as there was evidence in the present case, that the plaintiff was totally disabled from performing industrial work. The Court of Appeals sustained a verdict for plaintiff in the amount of $297,500 as against the defendant, S. J. Groves & Sons Co., Inc.

In Kieffer v. Blue Seal Chemical Co., D.C.S.D.N.J., 1952, 107 F.Supp. 288, the plaintiff, a 36 year old plumber with a wife and four children, was injured when defendant's cleaning mixture exploded, causing corrosive material to be blown into his face. The jury awarded plaintiff $250,000. In denying the defendant's motion for a new trial, the trial judge made the following pertinent statement:

"In addition to the physical injuries this man suffered, his total and permanent loss of earning capacity, the extreme pain and suffering of the past and that which he will undergo in the future as a result of operations which must be performed to graft more skin on his face to try and make him look human; there must be considered the mental suffering, anguish, anxiety, and other disabilities upon which it is almost impossible to set a monetary value. How could one set a monetary value of the loss to the plaintiff due to the effect of the grotesque and unnatural appearance of his face on his wife and minor children. I mention a few of these items only because they must have

been all considered by the jury in arriving at this large verdict. The jury also must have considered the rapidly vanishing purchasing power of the dollar." At page 290.

The judgment was affirmed by the Court of Appeals for the Third Circuit in Kieffer v. Blue Seal Chemical Co., 3 Cir., 1952, 196 F.2d 614.

Construing the evidence from the standpoint most favorable to the plaintiff, as must be done on a motion of this nature, see Snodgrass v. Cohen, D.C.D.C., 1951, 96 F.Supp. 292, I conclude that the verdict in this case was not so "excessive or outrageous" as to require a new trial or a remission of part of the verdict. Consequently, defendant's motion must be denied.

Defendant may obtain a stay of execution upon the judgment in this case by filing a notice of appeal and giving a supersedeas bond pursuant to Rules 62 (d) and 73(d) of the Federal Rules of Civil Procedure.

So ordered.